# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LINDSEY SMALL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | |
| ) | |
| GEORGIA BOARD OF REGENTS OF THE ) | **JURY TRIAL REQUESTED** |
| UNIVERSITY SYSTEM OF GEORGIA. ) | |
| ) | |
| Defendant. | |

## COMPLAINT

COMES NOW, Plaintiff Lindsey Small ("Plaintiff" or "Ms. Small"), by and through her counsel, and brings this *Complaint for damages* against her former employer Defendant Georgia Board of Regents of the University System of Georgia ("Defendant" or "BOR").

### JURISDICTION AND VENUE

1. This Court has original, federal question jurisdiction over this action, pursuant to 28 U.S.C. § 1331.

2. This Court has personal jurisdiction over Defendant. The tortious actions in question occurred, in part, in this district and division, and Defendant resides in Fulton County, Georgia, which is located within this district and division.

1

3. Venue is proper in this Court because Fulton County, Georgia, is located within this district and division and the events in question occurred, in part, therein.

## PARTIES

4. Plaintiff is a resident of Cobb, Georgia. She submits herself to the jurisdiction of this Court.

5. Defendant Board of Regents of the University System of Georgia administers all public universities in the State of Georgia, including Kennesaw State University ("KSU"), where Ms. Small was employed.

6. KSU is located in Fulton County, Georgia, within this district and division.

7. Defendant is located in Fulton County, Georgia, within this district and division.

## ADMINISTRATIVE PREREQUISITES

8. Plaintiff has satisfied all administrative prerequisites for bringing her Title VII claims in this Court.

9. On April 17, 2024, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), in which she asserted the Title VII claims brought in this Complaint against Defendant.

10. All allegations comprising Plaintiffs claims against Defendant occurred within 300 days of the filing of her EEOC Charge.

11. The United States Department of Justice, Civil Rights Division issued a "Notice of Right to Sue" on July 15, 2024, entitling an action to be commenced within ninety (90) days of receipt of that notice.

12. This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

**FACTS**

13. Ms. Small began attending Kennesaw State University as a student in 2013.

14. On November 30, 2015, Ms. Small was employed by KSU as a dispatcher with the Department of Public Safety and University Police.

15. Ms. Small was later promoted to a Uniform Patrol.

16. On or around October 2, 2022, Ms. Small was again promoted to Corporal.

17. By all accounts, Ms. Small was an excellent employee throughout her more than eight years of service to KSU.

18. For example, Ms. Small received a 4.37 and a Superior rating out of a possible five (5) points on her 2023 Performance Review.

19. This Performance Review was completed by Ms. Small's Manager, Police Sergeant Jeffrey Foust, on February 17, 2024.

20. As noted throughout her Performance Review, Ms. Small often went above and beyond, taking initiative by attending "high quality training that brings knowledge to the team" and by assuming "additional duties when asked by assisting other teams in staffing emergencies."

21. Ms. Small had no documented policy violations in 2023, and her manager specifically noted that she "understands KSU and USG policy and follows it while striving other to do the same."

22. Ms. Small was commended for demonstrating "proper judgment and decision making."

23. Ms. Small was also commended for providing law enforcement services in a "fair, honest, impartial, and unbiased manner," receiving an Exemplary rating in this category.

24. Throughout 2023 and presumably through February 17, 2023, when the Performance Review was completed, "Ms. Small continued to show she is an asset to KSU PD and the university."

### Ms. Small's Application for Sergeant

25. Despite Ms. Small's long and successful tenure with KSU, she was passed over in favor of male employees.

26. In August 2023, Ms. Small was not given the same promotional and advancement opportunities as similarly situated male employees.

27. On or around August 2, 2023, a Sergeant position was made available by Defendant.

28. Ms. Small applied for this position on August 6, 2023.

29. Just three days later, on August 9, 2023, Ms. Small was notified that she would not be interviewed for this position because she did not meet the minimum qualifications at the time the application was reviewed.

30. Specifically, Ms. Small did not meet the qualification that she have one year as a Corporal, Detective, or Field Training Officer ("FTO").

31. Ms. Small was approximately seven weeks short of meeting this requirement at the time that she applied for the position.

32. Ms. Small was aware of this requirement when she applied, and Deputy Chief Trudi Vaughan confirmed that this requirement existed prior to Ms. Small applying for the job.

33. However, Ms. Small also knew that KSU had made exceptions to this requirement and others for male employees in the past.

34. For instance, on August 22, 2022, Greg Stacy applied for a Sergeant position, despite having become a corporal on September 19, 2021, and therefore

5

falling approximately four weeks short of the one-year minimum requirement of being a Corporal.

35. Stacy further received FTO certification on October 29, 2021, meaning that he was well short of one full year with FTO certification.

36. Nonetheless, Stacy made it past the initial screening, received an interview for the position of August 31, 2022, and was promoted to Sergeant on September 4, 2022, still two weeks short of one year's experience as a Corporal.

37. Another male employee, Mark Melander, was hired as a Lieutenant despite not meeting the written requirements of the job posting.

38. Melander did not meet minimum requirements of the job posting for Lieutenant where it was explicitly required that the individual be Georgia Peace Officer Standards and Training ("POST") certified at the time of employment.

39. Melander was not Georgia POST certified at the time that he applied for the job.

40. Nonetheless, Melander was interviewed and selected for the position.

41. Melander was still not Georgia POST certified at the start of his employment with KSU.

42. Similarly, another male employe, Officer Jeff Cain, was given preferential treatment and advancement opportunities by Defendant despite not meeting the minimum requirements to do so.

6

43. Officer Cain was sent to Field Training Officer school and Instructor school to be eligible to teach after less than two years of being a police officer.

44. Officer Cain did not meet the requirements to attend the Field Training Officer school, but he was sent nonetheless.

45. Mr. Cain was also allowed to receive substantially more than 40 hours of training during a one-year period.

46. KSU's policy caps new officers at 40 hours of training per year.

47. Officer Cain was handpicked for these opportunities.

48. No female employees were solicited to show interest in these opportunities.

49. No female employees were offered these opportunities.

50. On August 11, 2023, Ms. Small complained to KSU's Office of Institution Equity ("OIE") about the discriminatory treatment she was subjected to.

51. Ms. Small alleged that she was being discriminated against on the basis of sex because she was not afforded the same opportunity to interview for the Sergeant position as male counterparts were afforded in the past, based on exceptions to the minimum job requirements.

52. Lauren Frasser, former KSU Equity and Title IV Investigator, reviewed Ms. Small's allegations and interviewed Ms. Small, Captain Duane

Manns, Lieutenant Christian Shepherd, Captain Ashley Richardson, and Deputy Chief Vaughan.

53. After an extensive investigation, Frasser determined, utilizing KSU's preponderance of the evidence standard, that there is sufficient evidence to support Ms. Small's claims of discrimination on the basis of sex by Captain Manns.

54. Frasser sent her report to KSU's Director of Institutional Equity & Title IX Coordinator Camille Cartwright and Associate Director and EEO/Title IX Investigator Colin Chadwick on May 16, 2024.

55. To date, this report has not been issued by Defendant.

### The November 16, 2023 Incident

56. On November 16, 2023, Ms. Small was dispatched to The Summit, a student housing facility, to respond to a fight.

57. When Ms. Small arrived at the scene, she met with the involved students and began investigating the incident.

58. Ms. Small's body-worn camera was on and recording throughout the entire incident, which Ms. Small was aware of and noted in the Incident Report she completed following the incident.

59. Ms. Small and her supervisor, Lieutenant Bernadette Haynes, both spoke with the alleged victim, Amiya Mosely, and viewed a video of the incident on Mosely's phone.

60. Ms. Small and Lt. Haynes were only able to see the beginning of the altercation in this video, during which Jaidan Garner jumped down from sitting on the bathroom sink and lunged at Mosely, grabbing her phone.

61. Ms. Small believed that she had viewed all the available video footage of the incident.

62. After viewing the video, Ms. Small asked Mosely to send the video to her.

63. Mosely stated that she was unable to immediately send the video due to the file size.

64. Instead, Mosely later sent a clip of the video showing the moments leading up to the physical altercation and then cutting out once the fight begins.

65. In addition to the physical altercation between Mosely and Gardner, Mosely also reported that Gardner broke her printer.

66. While on the scene, Ms. Small inspected Mosely's room and observed that the printer was damaged.

67. Specifically, Ms. Small noted that the front facing panel was torn off, which was evidenced in pictures taken by Ms. Small.

68. Following the incident, Ms. Small obtained warrants against Gardner for Terroristic Threats and Criminal Trespass Damage.

69. Due to well known and documented issues with KSU's warrant procedures and hardware, Ms. Small had to physically go to the courthouse multiple times during the evening to obtain these warrants.

70. Additionally, due to the issues with KSU's warrant procedures and hardware, duplicative warrants were issued initially.

71. The duplication issues were later resolved.

72. On November 30, 2023, KSU's Office of Professional Standards received a citizen complaint from Kendra Corsley, filing on behalf of her daughter, Gardner.

73. Crossley alleged that Ms. Small intentionally completed an inaccurate incident report and obtained an arrest warrant for Gardner breaking a printer when it was not broken.

74. On December 3, 2023, Ms. Gardner submitted her own complaints, alleging that Ms. Small violated her civil rights by illegally arresting her in violation of the Fourth Amendment, Ms. Small completed an inaccurate incident report which contained misinformation and did not accurately reflect the audio and video recordings, and that Ms. Small had included inaccurate information in the warrants.

75. Chief Edward Stephens requested that Lieutenant Ebonique Heywood of the Georgia State University Police Department conduct an independent review of these allegations.

76. Lt. Heywood found that Ms. Small had probable cause to arrest Ms. Gardner.

77. Lt. Heywood also noted that the cropped video Mosely showed and sent to Ms. Small was incomplete.

78. The full video was initially obtained by KSU's Student Conduct and Academic Integrity.

79. Captain Manns then obtained the full video and provided it to Lt. Heywood.

80. In the days after the incident occurred, Ms. Small followed up with Mosely to obtain the entire video.

81. Ms. Small was only able to obtain a cropped video that mirrored what Mosely showed Ms. Small and Lt. Haynes on her phone on the night of the incident.

82. When Ms. Small pushed Mosely to provide the full video, Mosely said she was speaking with Cobb County about bringing a case against Ms. Gardner, and she had been instructed to only speak with Cobb County officers regarding the incident, effectively refusing to further discuss this matter with Ms. Small.

83. Ms. Small never received the full video from Mosely.

84. Ms. Small was not aware that the video included additional substantive interactions until Crossley and Gardner brought their complaints.

85. At this point, in or around mid-December, Ms. Small learned that the remaining portions of the video showed Mosely and Gardner engaging in a purely verbal argument prior to Gardner physically attacking Mosely.

86. The video also showed a mutual physical altercation between Mosely and Gardner after Gardner grabbed Mosely's phone.

87. Lt. Heywood questioned Ms. Small about the video when preparing her report.

88. Ms. Small shared her attempts to retrieve the full video and explained that Mosely had said that she did not have access to the full video.

89. Ms. Small also explained that Mosely had effectively refused to continue speaking with Ms. Small at the direction of the Cobb County Sherrif's Office.

90. In her report, Lt. Heywood stated that Ms. Small did not review all evidence, and that had she reviewed the full video, the case "could have resulted in a different outcome."

91. For example, Ms. Small could have also arrested Mosely, in addition to Gardner.

92. Lt. Heywood went on to find that Ms. Small violated KSU's Code of Conduct provisions governing Truthfulness and the Responsibility to Know Laws and Procedures.

93. Lt. Heywood's findings regarding the video were based on Ms. Small's body-worn camera footage, in which Mosely stops the video after Gardner lunges at her and says that the rest of the video shows her defending herself.

94. Lt. Haynes' body-worn camera footage also shows Mosely making these comments.

95. Ms. Small did not hear these comments, nor did she recognize that Mosely had skipped past portions of the video.

96. Lt. Haynes similarly did not take any actions indicating that she heard Mosely's comments or recognized that portions of the video were missing.

97. Lt. Heywood stated her in report that Ms. Small made a conscious decision to not view the full video on scene.

98. However, Lt. Heywood made no findings as to Ms. Small's motivation for failing to review the full video.

99. Lt. Heywood also did not explain in her report why Lt. Haynes did not attempt to view the full video if she was also allegedly aware that the full video existed, based on the bod-worn camera footage.

100. On February 15, 2024, Chief Stephens requested that Captain Manns conduct a review of the investigative report generated by Lt. Heywood due to concerns about the accuracy, vagueness, and completeness of some of the statements or information contained in the report.

101. Captain Manns conducted this review and submitted his report on February 19, 2024.

102. Captain Manns affirmed Lt. Heywood's findings.

103. Captain Manns agreed with Lt. Heywood that Ms. Small made a conscious decision not to view the entire video of the altercation between Mosely and Gardner.

104. However, Captain Manns similarly made no findings as to Ms. Small's motive for doing so.

105. Similarly, Captain Manns did not explain why Lt. Haynes did not attempt to view the full video if she was also allegedly aware that the full video existed, based on the bod-worn camera footage.

106. On February 26, 2024, despite having no previous disciplinary actions and an otherwise stellar record of performance, Ms. Small was terminated.

107. Similarly situated male employees have not been fired for violations of the same provisions of KSU Code of Conduct.

108. Similarly situated male employees have been given more leniency when violating the same provisions of KSU's Code of Conduct, including progressive disciplinary actions such as verbal and written warnings and notices instead of immediate termination.

109. Any reasons given by Defendant to justify its termination of Ms. Small are pretext for unlawful discrimination and retaliation on the basis of Ms. Small's sex and protected complaints of discrimination.

## LEGAL CLAIMS

### COUNT I
*DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII*

110. By this reference, Plaintiff incorporates the above factual statements as if fully stated herein.

111. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee on the basis of her sex.

112. Defendant discriminated against Ms. Small on the basis of her sex when it refused to allow her to interview for the Sergeant position.

113. Defendant allowed situated male employees and candidates for employment to apply for positions that they were not qualified for, based on Defendant's written guidelines.

114. Plaintiff was not given the same opportunities for advancement as her male counterparts.

115. Plaintiff was not considered for a promotion to Sergeant because of her sex.

116. Defendant further discriminated against Ms. Small on the basis of her sex when it terminated her employment.

117. Similarly situated male employees were not fired for violating the provisions of KSU Code of Conduct that Ms. Small allegedly violated.

118. Similarly situated male employees were given more leniency when violating the provisions of KSU's Code of Conduct that Ms. Small allegedly violated, including progressive disciplinary actions such as verbal and written warnings and notices instead of immediate termination.

119. As a consequence of the discrimination that Plaintiff experienced from Defendant, Plaintiff has incurred lost wages and benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

120. Defendant's discrimination against Plaintiff was willful, wanton, and in reckless disregard for Plaintiff's rights under Title VII.

121. Defendant acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

122. Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

123. Upon information and belief, Defendant acted intentionally or, in the alternative, with deliberate indifference to Ms. Small's legal rights.

## COUNT I
### *RETALIATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII*

124. By this reference, Plaintiff incorporates the above factual statements as if fully stated herein.

125. Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating against an employee who has made a charge, testified, assisted or participated in any charge of unlawful discrimination.

126. Plaintiff engaged in protected activity under Title VII when, on August 11, 2023, she complained to Defendant that she was being discriminated against on the basis of sex because she was not afforded the same opportunity to interview for the Sergeant position as similarly situated male employees.

127. Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by terminating her employment.

128. As a consequence of the retaliation that Plaintiff experienced from Defendant, Plaintiff has incurred lost wages and benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

129. Defendant's retaliation against Plaintiff for engaging in protected activity and opposing sex discrimination was willful, wanton, and in reckless disregard for Plaintiff's rights under Title VII.

130. Defendant acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

131. Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays:

a. For a trial by jury;

b. A declaratory judgment that Defendant's practices complained of herein violation Plaintiff's rights under Title VII;

c. Lost wages and benefits resulting from Defendant's Title VII violations;

d. Compensatory damages for Defendant's Title VII violations, in an amount to be determined by the jury;

e. Punitive damages for Defendant's Title VII violations, in an amount to be determined by the jury;

f. Attorneys' fees and costs;

g. All other equitable and other further relief as this Court deems just and proper.

Respectfully submitted this August 8, 2024.

*/s/Zachary Panter*
Zachary Panter

Georgia Bar No. 822012
James Radford
Georgia Bar No. 108007

*Counsel for Plaintiff*

**RADFORD SCOTT LLP**
160 Clairemont Ave.
Suite 610
Decatur, GA 30030
(678) 271-0300
zpanter@radfordscott.com
jradford@radfordscott.com